## John Andrews *versus* Robert C. Ludlow, Principal, and Henry Chapman *et al.* Trustees.

The assignee of a chattel which is pledged, cannot be charged as trustee of the assignor, upon a trustee process served during the continuance of the lien.

The assignee of a contract to deliver goods cannot be charged upon the trustee process, the contract being a mere chose in action.

An assignment of property by an insolvent debtor in trust for the benefit of all his creditors, but upon condition that those creditors only shall be entitled to a dividend who shall within a certain time become parties to the assignment, and that the surplus, if any, and the dividend which would have become payable to any creditor if he had not neglected to become a party, shall be paid over to the assignor, is not *primâ facie* fraudulent as against creditors who do not become parties.

Chapman and Tuckerman, the supposed trustees, disclosed in their answers an indenture of assignment, dated June 18, 1822, between Ludlow of the first part, themselves, being creditors of Ludlow, of the second part, and other creditors, who should execute the indenture, of the third part, by which Ludlow assigns to Chapman and Tuckerman certain real estate, chattels, and credits, upon trust to sell the land and chattels and collect the sums due to Ludlow, and after deducting their expenses and 1000 dollars for their services in executing the trust, in the first place, to apply the proceeds to the payment in full of debts due from Ludlow to the United States, amounting to about 3000 dollars ; — secondly, to apply the residue in payment *pro ratâ* of the debts due to the assignees and the creditors of the third part, but on condition that those creditors only shall be entitled to a dividend, who shall execute the indenture within two months from the date (and by a subsequent agreement of September 6th, within thirty days from that time) ; — and thirdly, to pay to the order of Ludlow the surplus, if any, and any dividend which would have become payable to any creditor if he had not neglected to execute the indenture. The creditors who became parties to the indenture thereby released their demands. The supposed trustees further stated, that the indenture was executed by Ludlow, one Thayer, and themselves, before the service of this trustee process, which was on the 3d of July, 1822. Their own demands, exclusive of the

1000 dollars above mentioned, amounted to 4453 dollars, and Thayer's was 2511 dollars. The amount due to creditors who afterwards executed the indenture exceeded 10,000 dollars.

Part of the property assigned consisted of two thirds of the brig Wethered and her cargo, and one quarter of the brig Hopestill and cargo, both then at sea, and pledged to T. K. Jones & Co., from whom the assignees afterwards received a balance of 5919 dollars. Some property at St. Salvador was likewise supposed to be included in the pledge and in the balance just mentioned. The Hopestill, which was insured, was lost at sea, and the assignees received from the underwriters 3243 dollars.

Another item was 300 barrels of beef, referred to as being under Boylston Market, but which was never there; Ludlow having only a contract, made by one Whiting, engaging to deliver to Ludlow or his order that quantity of beef. An action was brought upon this contract, and upon a judgment recovered the assignees received 1419 dollars. [See *Chapman et al.* v. *Searle, Administrator of Whiting*, 3 Pick. 38.]

Further sums amounting to about 1100 dollars were received by the assignees; part of which was the proceeds of some of the land assigned.

*Phillips* and *Sewall*, for the plaintiff, contended that there was nothing in the situation of the property assigned to prevent its being a proper subject for the trustee process; — and further, that the assignment was fraudulent, on account of the stipulation that part of the property should be paid over to the assignor, in case any of his creditors should not agree to he terms of the assignment. *Riggs* v. *Murray*, 2 Johns. Ch. R. 565; *Hyslop* v. *Clarke*, 14 Johns. R. 458; *Burd* v. *Smith*, 4 Dallas, 76; *Austin* v. *Bell*, 20 Johns. R. 442; *Harris* v. *Sumner*, 2 Pick. 129; *Widgery* v. *Haskell*, 5 Mass. R. 144.

*Cooke*, for the supposed trustees, cited, as to the first point, *Maine F. & M. Ins. Co.* v. *Weeks and Tr.* 7 Mass. R. 438; *Frothingham* v. *Haley and Tr.* 3 Mass. R. 70; *Willard* v. *Sheafe and Tr.* 4 Mass. R. 235; *Wood* v. *Partridge*, 11

Andrews
*v.*
Ludlow &
Trs.

*April 6th,*
1826.

Andrews
v.
Ludlow &
Trs.

April 9th,
1827.

Mass. R. 493 ; *Grant* v. *Shaw*, 16 Mass. R. 343 ; *Perry* v *Coates*, 9 Mass. R. 537 ; — and as to the second point, *Hastings* v. *Baldwin*, 17 Mass. R. 557.

WILDE J. delivered the opinion of the Court.[*] By the account stated by the trustees, it appears that there is a balance remaining in their hands, belonging to the creditors of Ludlow, and the question is, whether they are chargeable therefor, or for any other amount, in the present action.

A large proportion of the funds now in their hands was received from Jones & Co. after the service of the plaintiff's writ, for and on account of two brigs and their cargoes, which had been assigned previously thereto to the trustees, subject however to an assignment before made to Jones & Co. for the security of a demand due to them from Ludlow. These brigs were absent at sea at the time of the assignments, and the trustees contend, that under these circumstances this property was not attachable in their hands by virtue of the present process. On the other hand, the plaintiff contends, that as a valuable interest passed to the trustees by virtue of the assignment, the goods must be considered as in the constructive possession of the trustees ; and that the proceeds of sale, which have since come to their hands, are bound to respond the judgment which may be recovered in this suit.

In the case of *Willard* v. *Sheafe and Tr.* 4 Mass. R. 235, it was decided, that the trustee was not chargeable for a part of a cargo belonging to the principal, which he had left in the hands of certain merchants, in a foreign port, to be disposed of on the joint account of all concerned, although after the service of the writ upon him he had received the proceeds of the sale. And in *Grant et al.* v. *Shaw and Tr.* 16 Mass. R. 344, it was held, that the consignee of goods cannot be charged as trustee, until he has accepted the consignment and the goods have arrived.

These cases were decided on the ground that a trustee is not chargeable for personal property belonging to the prin-

---

[*] *Parker* C. J. did not sit in this case.

Andrews
*v.*
Ludlow &
Trs.

cipal, of which he has only the constructive possession; but it must be in his actual possession, or within his control, so that he may be able to turn it out, to be disposed of on execution.[1] This we consider a reasonable construction of the statute; a different one might expose the trustee to manifest injustice. At the time of the service of the plaintiff's writ the property in question was at sea, or in some foreign port. It was beyond the control of the trustees, and has in truth never since been in their possession. One vessel was lost at sea, and the other, with her cargo, was disposed of by Jones & Co. to whom it was first assigned. The trustees had not even a constructive possession, for they had no right of possession against Jones & Co. the first assignees or mortgagees, and while the lien in their favor continued, the property was not attachable, either in the common form, or in the hands of the trustees. Nor can the trustees be charged on account of the liability of Jones & Co. to account for the surplus of the assigned property, after the payment of their own demands against Ludlow. This liability was contingent; the vessels might be lost, and some difficulty might occur to prevent a recovery on the policies. Besides, if it were absolute, the trustees were not liable until they actually received payment.

Upon no ground, therefore, can the trustees be charged with the proceeds of the sale of this property. And for the same reasons they cannot be charged for the property at St. Salvador.

Another item of considerable amount is the 300 barrels of beef, supposed to be deposited under Boylston market. By the answers of the trustees it appears that no beef was there deposited. Nothing was delivered to them but the contract or engagement of one Whiting to deliver to Ludlow 300 barrels of beef. On this contract an action was instituted by the trustees, but judgment was not recovered until after the service of the plaintiff's writ. It was an action involved in doubt and difficulty; and were it otherwise, still the trustees are not chargeable for a mere chose in action.

---

[1] See *Stone* v. *Hodges*, 14 Pick. 85; Cushing on Trustee Process, *p.* 17, § 30

Deducting these several items from the account stated, a large balance will remain in favor of the trustees, and the other questions relating to the claims of the United States, the trustees' expenses, &c., become immaterial.

But it has been argued, that the assignment to the trustees was fraudulent, and therefore that the trustees have no lien on the funds in their hands even for their own demands. It is true that in case of a fraudulent assignment no lien is created in favor of the assignee, nor can such an assignment be set up to defeat the attachment of a creditor ; as was decided in the case of *Burlingame* v. *Bell*, and in the case of *Harris et al.* v. *Sumner ;* but it does not follow that the trustees are liable for the whole funds in their hands, without any deduction for their own *bonâ fide* demands, and if these exceed the amount of the funds, they are not chargeable.[1] The question in this case is whether the trustees had any credits of Ludlow in their hands, or whether, on a just settlement of all *bonâ fide* demands between them, there was a balance due to the principal.

But it is unnecessary to decide this point, since we are of opinion that the assignment cannot from the disclosure of the trustees be held fraudulent. It purports to have been made for the benefit of all the creditors, and there is no reason to doubt that the whole property assigned would have gone for the payment of debts, according to the terms of the contract, if this and other attachments had not intervened to prevent.

The clause relied on as indicating fraud may be some evidence of it, but it is not conclusive, and may be capable of a satisfactory explanation. The clause is as follows : — " To pay the surplus, if any (after paying certain creditors) to the said Ludlow, and in like manner to pay over any dividend which would have become payable to any creditor, if he had

---

[1] See *Beach* v. *Viles*, 2 Peters, 678, 679; *Lamb* v. *Stone*, 11 Pick. 533, 534 *Ripley* v. *Severance*, 6 Pick. 474; *Thomas* v. *Goodwin*, 12 Mass. R. 140. *Brewer* v. *Pitkin*, 11 Pick. 298; 2 Kent's Comm. (3d ed.) 535, and n c Cushing on Trustee Process, *p* 83, § 202.

not neglected to become a party within two months after the making of said assignment." [2]

As to the agreement to pay over the surplus, it is clear that it could have no effect, because the debts greatly exceeded the value of the property. It was probably introduced as a matter of form, by the person who drew the assignment, and passed without notice ; for it seems impossible there could have been an expectation that a surplus would remain after payment of the debts. As to the stipulation to pay over to Ludlow the dividends of creditors who should neglect to become parties to the assignment, the presumption is, that it was inserted for the purpose of hastening the creditors, so as to bring the settlement of the concern to a speedy conclusion. This case therefore is not like the case of *Harris & al.* v. *Sumner*, before referred to, in which a large provision was secured to the debtor unconditionally. The Court held that such a provision was conclusive evidence of fraud. In the case under consideration we cannot infer that it was the intention of the parties to make provision for the benefit of the debtor, for it could not be presumed that the creditors would refuse to accede to an arrangement evidently made for their benefit,[1] and there could have been no expectation of a surplus. It appears also, that after the expiration of the time first allowed for the creditors to become parties, the time was further extended ; which confirms the presumption that the clause in question was not introduced for the purpose of making any provision for the debtor.

We are therefore of opinion that the assignment to the trustees was valid, and binding on the parties who had signed it previously to the service of the plaintiff's writ ; and as creditors had then signed, whose demands exceeded the value of the property conveyed to the trustees, the assign-

---

[2] See as to the introduction of such a provision into an assignment, 2 Kent's Comm. (3d ed.) 534, and cases cited in n. *a*

[1] Neither is it to be presumed that they assent to such an arrangement. *Russell* v. *Woodward*, 10 Pick. 408 ; *Halsey* v. *Whitney*, 4 Mason, 206 ; *Borden* v *Sumner*, 4 Pick. (2d ed.) 267, note ; *Leeds* v. *Sayward*, 6 N. Hamp R. 85

Andrews
*v.*
Ludlow &
Trs.

ment cannot be impeached by the other creditors of Ludlow, who neglected to become parties.

*Trustees discharged.*