In re COLONY PRESS, INC., Debtor.

Bankruptcy No. 87–400509–JFQ.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 27, 1988.

Stephen F. Gordon, Boston, Mass., for debtor.

Carl D. Aframe, Worcester, Mass., for petitioning creditors.

Richard P. Salem, Leicester, Mass., for trustee.

Stanley S. Labovitz, Worcester, Mass., assignee for the Benefit of Creditors.

OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

Stanley S. Labovitz (the "Petitioner") has filed a pleading entitled "Petition" requesting the sum of $9,675.00 for services as assignee for the benefit of creditors of Colony Press, Inc. (the "Debtor"). The petition presents the Court with a question of first impression in this Circuit concerning the possible conflict of interest involved where a lawyer for a debtor also serves as assignee for the benefit of the debtor's creditors. Also presented are questions of the assignment's validity under state and federal law due to the provision in the assignment restricting participation thereunder to those creditors who assent thereto and agree to discharge the debtor from further liability.

The Petitioner is a lawyer in private practice. He has represented the Debtor in the past concerning matters unrelated to the events involved here. In May of 1987, Donald Conant ("Conant"), the Debtor's president and principal stockholder, sought the Petitioner's advice because of the Debtor's financial problems. At the suggestion

of the Petitioner, a professional appraiser (who shares offices with the Petitioner) valued the Debtor's tangible assets. No decision was made at that time as to a course of action. In September of 1987, Conant again sought the Petitioner's advice. The Petitioner explained to him the various means that could be used to continue the business, such as a composition with creditors and reorganization under Chapter 11, as well as the different methods available to liquidate the business, including relief under Chapter 7 and an assignment for the benefit of creditors. Conant decided to sell the business as a going concern to its best customer, who had made what Conant considered to be an attractive purchase offer. The Petitioner advised Conant to have the Debtor make an assignment for the benefit of its creditors, and suggested to him that the Petitioner act as assignee.

Conant acceded to the Petitioner's advice. On September 18th, the Petitioner and the Debtor, through Conant, signed a document (the "Assignment") transferring all of its assets to the Petitioner as assignee for the benefit of the Debtor's creditors. The Assignment consists of a printed form which is available at legal stationers and has been in common use in Massachusetts for many years. The property transferred was described as the "trust property" which the Petitioner agreed to hold "in trust." The Assignment required the Petitioner to make the following payments from the trust property or its proceeds (after expenses including "reasonable compensation" for his own services), in this order of priority; (1) to claimants entitled to priority under the bankruptcy laws of the United States; (2) to those creditors who assent to the Assignment, in payment of their claims in full or pro rata, depending upon the amount of the trust property; (3) any balance to the Debtor. Creditors were permitted to become parties to the Assignment by either signing the Assignment itself or by "specifically assenting to the same in writing in a form satisfactory to the assignee...." A creditor by assenting to the Assignment was deemed to agree to take the amount payable to him thereunder "in full satisfaction and discharge" of his debt and to "release" the Debtor therefrom. The Assignment further stated that "[N]o creditor not so executing or accepting this instrument shall be entitled to any benefit herefrom."

By letter dated September 18th the Petitioner notified creditors that he had been "appointed" assignee for the benefit of the Debtor's creditors. He told them that it had been decided, and consented to by the Debtor's bank, to hold a public auction on September 29th. This date was fixed because the customer's offer of purchase expired on September 30th. He enclosed a form of assent to be signed and returned to him "in order that you might receive your dividend from the liquidation of the assets of the debtor." The Petitioner did not inform creditors that he was also the Debtor's lawyer. Unsecured debt, exclusive of the bank's deficiency, totaled about $900,000. Creditors holding claims totaling $97,110.21 signed and returned assent forms. The largest unsecured creditor, owed about $600,000, did not assent. The Petitioner advertised for the scheduled auction on only one day, placing ads on September 27th in the Worcester Telegram, the Boston Globe and The Providence Journal.

Three creditors of the Debtor filed an involuntary petition against the Debtor on September 25, 1987 seeking an order for relief under Chapter 11, 11 U.S.C. § 1101 *et seq.* They promptly filed a motion for the appointment of a trustee, which the Court heard on September 28, 1987. By written order, the Court on that date authorized the appointment of an interim trustee on or after September 30th. The Court also permitted the auction scheduled for September 29th to proceed, but with a minimum bulk bid of $300,000, which was the amount the Debtor's customer said he would bid. The Court found that this was a fair price, based upon an appraisal submitted by the bank holding a security interest in the property. The Court noted at the time that the bank wanted the sale to proceed. The Court's order of that date also required the Petitioner to obtain as his sole compensation such sum as may be later approved by

the Court, from assets free of the bank's lien. The present application followed.

An assignee in a general assignment for the benefit of creditors is a so-called "custodian" under the Bankruptcy Code. 11 U.S.C. § 101(10). Where a bankruptcy filing is made within 120 days of an assignment, the assignee is required to deliver the debtor's property to the bankruptcy trustee, unless the court rules that the interest of creditors would be better served by permitting the assignee to remain in possession and continue with his duties under the assignment. 11 U.S.C. § 543.[1] Based upon this flexible standard, the Court in its previous order declined to require a turnover, but the Court reserved its statutory right under § 543(c)(2) to rule upon the Petitioner's compensation.

■ The Petitioner was the Debtor's attorney at the time of the assignment and up until shortly after the bankruptcy filing; he gave the Debtor legal advice concerning the very matter that prompted the Assignment: the Debtor's precarious financial condition. As "trustee" of "trust proper-

ty" under the Assignment, the Petitioner obviously assumed the fiduciary obligations of a trustee running in favor of the assenting creditors as beneficiaries. Even if such trust language is not used, an assignee for the benefit of creditors is regarded as a trustee. *See* G. Glenn, *Liquidations* § 106 (1935). The Petitioner took on his trusteeship without first severing his attorney-client relationship with the Debtor, which in any event could be done only through notice sufficient to give the Debtor reasonable time to employ successor counsel. *See* Mass.Sup.Jud.Ct.R. 3:07, DR 2–110. The question arises, therefore, as to whether the Petitioner's dual role created a conflict of interest, and, if it did, whether that conflict is sufficiently serious to affect Petitioner's right to compensation. Essentially the same question may be presented even if the Petitioner had properly severed his legal representation of the Debtor, but we confine ourselves to the facts before us.

■ We decide, as a preliminary matter, that federal rather than state law applies.

1. § 543 reads as follows:

(a) A custodian with knowledge of the commencement of a case under this title [11 USCS §§ 101 et seq.] concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall—

(1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

(2) provide for the payment of reasonable compensation for services rendered and costs

and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title [11 USCS §§ 101 et seq.].

(d) After notice and hearing, the bankruptcy court—

(1) may excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

(2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

Our task is to apply the provisions of 11 U.S.C. § 543 giving an assignee for the benefit of creditors the right to "reasonable compensation." It is immaterial that the statute applies to a liquidation procedure largely regulated by state law, or that the Assignment contains its own provision allowing the Petitioner reasonable compensation. Upon the filing of the bankruptcy petition within 120 days of the Assignment being made, the mandate of § 543 is that federal bankruptcy law shall thereafter control and this Court shall have jurisdiction of the matter, unless the Court determines that the interests of creditors would be better served by permitting the assignee to continue in his administration. Bankruptcy Code standards now control the question of Petitioner's compensation. *See In re Ashley,* 41 B.R. 67, 73 (Bankr.E.D. Mich.1984); *In re Gomes,* 19 B.R. 9 (Bankr. D.R.I.1982).

Neither § 543 nor any other section of the Code contains express qualifications for an assignee to meet in order to be entitled to compensation. We are left to seek guidance elsewhere. We find it in the Bankruptcy Code's provisions governing the qualifications required for a trustee or his counsel, in the inherent fiduciary nature of the obligations of an assignee for the benefit of creditors, in the comprehensive statutory regulation of assignments enacted in some states, and in the professional obligations of lawyers.

We begin with the nature of the obligations of the Petitioner as assignee, and how they mesh with the obligations imposed upon him as Debtor's counsel. The Petitioner's obligations as a trustee are as exacting and lofty as the law creates. Justice Cardozo, in one of the common law's most quoted pronouncements, had this to say of the obligations of a trustee: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilia of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon,* 249 N.Y. 458, 463–64, 164 N.E. 545, 546 (1928).

As a trustee, the Petitioner was required to administer the trust diligently in accordance with its terms and in the sole interest of the assenting creditors. *Restatement (Second) of Trusts* §§ 170, 174. His position of trust and confidence also mandated full disclosure to the assenting creditors of all material facts known to him which related to their rights under the trust. *Restatement (Second) of Trusts* § 173 comment d. This obligation of disclosure was largely frustrated by Petitioner's professional obligation to maintain the confidences of the Debtor. The two meet head on. For example, if Petitioner had learned in confidence from the Debtor of a preference or fraudulent transfer made by the Debtor, he would not be permitted to disclose this information even though it could be crucial in the creditors' decision on whether or not to assent to the Assignment. *See* Mass.Sup.Jud.Ct.R. 3:07, DR 4–101. Petitioner's obligation to be diligent in his duties under the Assignment would likely require some "policing" of the Debtor to be sure that the Debtor was not holding out on the inclusion of any property in the Assignment. But the necessity of such policing appears to require him to have declined the Assignment, because under the Canons he must decline any proffered employment that is likely to adversely affect his exercise of independent professional judgment in behalf of a client. *See* Mass.Sup.Jud.Ct.R. 3:07, DR 5–105.

Beyond those considerations, the very terms of the Assignment create potential conflict. It grants the Debtor the right to receive back the excess of the value of unencumbered property over the total claims of assenting creditors. Any questions concerning the amount of a claim, or whether a creditor should be permitted to assent, therefore bear directly upon the existence or not of surplus going back to the Debtor. Petitioner's understandable inclination to favor the Debtor as his client would likely cloud his decisions as Assignee concerning these matters. So we appear to have yet another violation of Petitioner's professional obligations, the obligation to avoid even the appearance of professional

impropriety. *See* Mass.Sup.Jud.Ct.R. 3:07, Canon 9.

These considerations appear to have prompted some states to pass legislation which either prohibits a debtor from naming his lawyer as assignee or gives creditors the power to replace the assignee named by the debtor.[2] Massachusetts, whose regulation on the subject of assignments is minimal (*See* Mass.G.L. ch. 203, §§ 40–42), has imposed no such restriction. But Congress has done so with respect to the analogous situation involving the appointment of a trustee under the Bankruptcy Code.

One who is appointed interim trustee in a Chapter 7 case must be a "disinterested person." 11 U.S.C. § 701. The same is true as to a trustee appointed in Chapter 11. 11 U.S.C. § 1104. Under § 101(13), a "disinterested person" is defined as a person who:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason[.]

This definition is derived, with some modification, from § 158 of Chapter X in the prior bankruptcy law, the Bankruptcy Act of 1898. *See* 11 U.S.C. § 558 (repealed 1978); H.R.Rep. No. 595, 95th Cong. 1st Sess. 310–211 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. *See also* Rules 10–202(c)(2)(C), § 10–206(a) of the prior Rules of Bankruptcy Procedure (excluding debtor's attorney as either a trustee or as an attorney generally representing the trustee). Former § 158(3) expressly excluded the debtor's attorney as a disinterested person.

Under the Code, the debtor's attorney is excluded from serving as trustee by reason of having "an interest materially adverse to the estate...." In addition to § 101(13), other sections must be considered before this point is brought home. Section 327(a), governing employment of professional persons under all the chapters, generally requires that a professional be a disinterested person. Section 1107, which addresses employment of counsel and other professionals by a debtor in possession in Chapter 11, provides: "Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the

---

**2.** Existing statutes addressing these matters include the following: N.C.Gen.Stat. § 23–6 (¼ of assignor's creditors whose claims aggregate more than 50% of total indebtedness may petition court to remove assignee and appoint another "competent" person); Ohio Rev.Code Ann. § 1313.05 (creditors can petition court to allow them to elect new assignee on grounds that assignee named by assignor is not a "suitable" person and his administration of estate is not in "best interests" of creditors); S.C.Code Ann. §§ 27–25–40, 27–25–90 (creditors may elect agent with equal power and authority as assign-

or's assignee to co-administer estate); Va.Code Ann. § 55–156 (majority of creditors may in writing nominate and install assignee different than the assignor's assignee, subject to court approval); W.Va.Code § 38–13–12 (assignee named by assignor may not be a relative, creditor, attorney, agent, officer or employee of assignor). *See also* Note, *Statutory Regulation of Assignments for the Benefit of Creditors,* 47 Yale L.J. 944, 952–53 nn. 58 & 59, 62 & 63 (1938) (identifying these and similar statutes in effect in 1938).

commencement of the case." Significantly, a trustee under either Chapter 7 or Chapter 11 is given no such permission to hire the debtor's lawyer. In fact, there is an express statutory exclusion of the debtor's lawyer as one who can generally represent the trustee in the conduct of a bankruptcy case. The trustee may only employ the debtor's lawyer "for a specified special purpose, other than to represent the trustee in conducting the case ... if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). If the trustee cannot employ the debtor's lawyer to represent him in conducting the case because the debtor's lawyer is not a disinterested person, the lawyer himself cannot act as trustee, for the same reason. Congress could have made this clearer by expressly excluding the debtor's lawyer in § 101(13), as was done under § 158 of Chapter X of the old Act. Apparently, § 101(13) uses the materially adverse interest standard to accomplish the same purpose by reason of the difference between Chapter X of the old Act and present Chapter 11. Under old Chapter X, a trustee was always appointed. Under present Chapter 11, a debtor in possession rather than a trustee is the norm.

■ The debtor's former counsel may not, therefore, serve as interim trustee under Chapter 7 or trustee under Chapter 11, bebecause of the conflict between his role as counsel and his obligations to the estate.[3] Although there seem to be no decisions on this question, perhaps because of the basic nature of the conflict, the extent of the conflict is emphasized by the numerous decisions applying the materially adverse interest standard in the employment of counsel. In situations involving the employment of counsel on behalf of the estate, the courts have shown a sensitivity to conflict issues that are far more refined than the question of debtor's counsel serving as trustee. *See, e.g., In re Martin,* 817 F.2d 175 (1st Cir.1987) (note and mortgage securing counsel's fee may constitute an adverse interest depending upon other factors); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328 (E.D.Pa.1982) (firm which had represented a 50% owner of debtor during Chapter 11 proceeding in attacking a plan of reorganization proposed by other owner held to have materially adverse interest and thus could not represent Chapter 11 trustee, even though the firm had resigned from the prior representation, because its advice was likely to be unconsciously colored by its prior representation, and because of appearance of impropriety under Canon 9); *In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985), *rev'd. on other grounds* 75 B.R. 402 (D.Utah 1987) (law firm which represented individuals in their bankruptcy case denied all fees in representation of individuals' corporation in its Chapter 11 case by reason of cross liabilities between individuals and corporation); *Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160 (Bankr.D.Ariz.1984) (materially adverse interest present where counsel for Chapter 11 debtor also represented debtor's landlord, to whom the debtor owed substantial back rent; court relied in part upon Canon 9 concerning appearance of impropriety). *See also Meredith v. Thralls,* 144 F.2d 473 (2d Cir.1944), *cert. denied* 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607 (1944) (appointment of individual as Chapter X operating trustee denied because existing employment by debtor's parent having large investment in a corporation which had contractual dealings with debtor would place him in "crossfire of conflicting loyalties").

---

**3.** It may be that a debtor's former counsel is permitted to serve as an elected trustee in Chapter 7. The section concerning election of a Chapter 7 trustee contains no requirement that he be a disinterested person. *See* § 702. Apparently the draftsmen thought that creditors who elect a trustee do not need this protection because of their free decision to vote in the election. No such free decision, however, is present in the facts of the present case, both because of the Petitioner's failure to disclose that he was the Debtor's lawyer and because of the element of coercion present where creditors are required to assent to the Assignment in order to participate thereunder.

868

We conclude that the principle which prevents the debtor's lawyer from serving as trustee or trustee's counsel because he has a materially adverse interest, and which denies him compensation if he does serve, also controls the question of an assignee's compensation under § 543. Research discloses only one decision involving a similar question under an assignment, and that decision was under the Bankruptcy Act of 1898. In *In re W.T. Byrns, Inc.*, 260 F.Supp. 442 (E.D.Va.1966), a father and son were law partners in a firm which represented the debtor. The debtor made an assignment for the benefit of its creditors to the son as assignee. The son then hired his father to represent him in a suit brought against him as assignee. Shortly thereafter, a bankruptcy petition was filed, and the father applied to the court for attorney's fees. Noting the absence of judicial supervision of assignments in Virginia, the court analogized the situation before it to a debtor's attorney attempting to serve as trustee in a bankruptcy case. Concluding that debtor's counsel may not serve as trustee, the court denied the father all compensation because of the conflict.

General principles of trust law emphasize actual violations of trust rather than propylactic disqualification for conflict of interest. Thus one of several beneficiaries may serve as sole trustee. *Restatement (Second) of Trusts* § 99(2). A commercial bank may serve as trustee even though there may be some tendency for its trust department to favor its commercial department as a depositary of trust funds and even though there may be debts owed it by a beneficiary. *Scott on Trusts* § 170.23A (4th ed. 1943). Disclosure of a conflict and consent thereto may protect the trustee. *Restatement (Second) of Trusts* § 216(1). But a trustee's obligation of loyalty is strictly enforced. If he violates that obligation, he is subject to surcharges and removal. *Restatement (Second) of Trusts* §§ 107, 206; *New England Trust Co. v. Triggs*, 334 Mass. 324, 135 N.E.2d 541 (1956). He can also lose his right to compensation. *Scott on Trusts* § 243 (4th ed. 1943). *See also Quinn v. Burton*, 195 Mass. 277, 81 N.E. 257 (1907). Even though the beneficiary consents to a transaction in which the individual interest of the trustee is adverse to that of the beneficiary, the beneficiary may still surcharge the trustee or set the transaction aside if the transaction was not fair and reasonable. *Restatement (Second) of Trusts* § 216(3). There is, nevertheless, no requirement under general trust law that a trustee resign or be subject to removal because of a materially adverse interest in a transaction, in advance of his actual handling of the transaction. The wisdom of such a resignation has, however, been recognized. *See, e.g., Donovan v. Bierwirth*, 680 F.2d 263, 271–72 (2d Cir.1982) (where trustees of corporate pension fund, who were also directors or officers of corporation, bought rather than sold the stock of corporation subject of hostile tender offer at above market price, there is "much to be said" for the argument that the trustees should have immediately resigned in order to permit neutral trustees to take over). Because of the extent of the conflict present here, we believe that the principle of disinterestedness which has been adopted by the Bankruptcy Code as a prerequisite for service by trustees or their counsel is more suitable than the post-event approach of trust law. In any event, even under general trust law, Petitioner should have disclosed to the Debtor's creditors that he represented the Debtor, and requested their consent. Absent such disclosure and consent, he could be denied compensation if a breach of trust ensued. *Scott on Trusts* § 243 (4th ed. 1943).

We do not rest our decision on Petitioner's failure to disclose to creditors his role as counsel to the Debtor. We regard the conflict as too severe to reward service even with disclosure. The danger of abuse in this largely unregulated and static area of the law has been noted by commentators who have written on the subject of assignments for the benefit of creditors. *See, e.g.,* Weintraub, Levin & Sosnoff, *Assignment for the Benefit of Creditors and Competitive Systems of Liquidation*, 39 Cornell L.Q. 3 (1953); *Statutory Regula-*

*tion of Assignments for the Benefit of Creditors,* 47 Yale L.J. 944, 946 (1938) ("since the debtor may defy creditors and select his own assignee, the door to fraud is open"). Because of this danger, problems likely to ensue from the conflict must be avoided altogether.

In view of our disposition of the matter, it is unnecessary to decide whether the assignment is valid under applicable law, such validity being arguably a condition to the assignee's right to compensation under § 543. We instead set forth in brief detail issues concerning the validity of the Assignment under Massachusetts and federal law. We do this because they are otherwise central to the question before us.

The Assignment exacts a discharge of the Debtor as the price for a creditor to participate through assent. The predominant rule at common law is that an assignment is invalid if it requires assenting creditors to release the assenting creditors do not participate and any surplus goes back to the debtor.[4] There appear to be two theories for voiding the assignment, one based upon fraudulent transfer law and the other based upon general policy against unfair coercion.[5] The Massachusetts decisions are not entirely clear on the question, or easily reconcilable,[6] and Massachusetts statutory law goes no further than protecting the assignee from liability under certain conditions.[7] The discharge provision in the Assignment also raises the question of whether the Assignment, or at least its provision releasing the debtor through assent, is invalid under federal law because it involves a matter which has been pre-empted by the Bankruptcy Code. The question was expressly left open in *International Shoe Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929), where the court invalidated a state insolvency law. Nor is it resolved by later decisions of the Supreme Court dealing with assignments.[8] The writers are of the opinion that state law affirming a discharge provision in an assignment for the benefit of creditors, whether the law be statutory or decisional, is not an invalid encroachment upon federal bankruptcy law.[9]

**4.** G. Glenn, *Liquidations* (1935); Comment, *Discharge of Debtor by Assignment for Benefit of Creditors,* 41 Yale L.J. 603, 608 (1932); 6 Am Jur.2d., *Assignments For The Benefit of Creditors* § 51 (1963). *See Gessler v. Myco Company, Inc.,* 29 Ill.App.2d 227, 172 N.E.2d 503 (1961).

**5.** *See* authorities cited in note 4, *supra.*

**6.** *Compare Ingraham v. Geyer,* 13 Mass. 146 (1816) (assignment in trust for creditors who signed a release of debtor ineffective against creditor who levied thereafter; assignment deemed without consideration, involuntary on the part of creditors and "shuts out from participation of the funds all the creditors who will not give an absolute discharge of their debts"), *with Andrews v. Ludlow,* 22 Mass. (5 Pick.) 28. (1827) (clause in assignment, which also contained a discharge clause, requiring payment to assignor of any dividend otherwise payable to creditors who neglect to become parties held some evidence of fraud but not conclusive in that it is explainable as intended to hasten consent of creditors; discharge clause not commented upon by court); *Russell v. Woodwood,* 27 Mass. (10 Pick.) 407 (1830) (assignment effective against later attaching creditor only to the extent of "consideration" in form of debts owed assenting creditor; court refused to presume assent despite argument that assent should be presumed because release of debtor not required); *and Sinclair v. Napoli Cafeteria, Inc.,*

244 Mass. 221, 138 N.E. 327 (1923) (assignment requiring assenting creditors to release debtor effective against later attaching creditor where debts owed assenting creditors exceeded value of property sought to be attached; no discussion by court of validity of discharge requirement).

**7.** *See* Mass.G.L. ch. 203, §§ 40–42.

**8.** *See Pobreslo v. Joseph M. Boyd Company,* 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469 (1933) (Wisconsin statute which regulated assignments and did not require that creditors seeking to participate agree to the debtor's discharge held valid); *Johnson v. Star,* 287 U.S. 527, 58 S.Ct. 265, 77 L.Ed. 473 (1933) (assignment apparently containing no discharge provision held effective to remove property from reach of levying creditor in view of Texas Supreme Court decisions invalidating Texas statute imposing a discharge upon creditors assenting to the assignment and receiving thereunder more than one-third of their debt; the court quoted without disapproval a decision of Texas Supreme Court that upheld the discharge of a debtor where the assenting creditors had received more than one-third of their debts under an assignment good at common law which exacted an agreement by creditors to release debtor).

**9.** *See* G. Glenn, *Liquidations* § 125 (1935) (assignment containing clause on discharge merely an agreement between debtor and creditor, so

We pass over both of these difficult issues.

At the initial hearing on this matter, which resulted in a continuance requested by both Petitioner and the United States Trustee, the Court expressed concern over the apparent conflict of interest. Petitioner thereafter sought to dismiss the petition. The Court denied voluntary dismissal pending further order specifying the terms of dismissal, pursuant to Bankr.R. 7041(a)(2).

## CONCLUSION

The Petitioner is denied all compensation because of the inherent conflict of interest involved in his roles as assignee for the benefit of creditors and counsel to the debtor. A separate order has issued dismissing the petition.

that state law approving the agreement is not invalid state insolvency law; in any event, only clause on discharge and not entire assignment should be voided); L. King & M. Cook, *Creditors' Rights, Debtors' Protection and Bankruptcy* § 9.02 (1985), (assignment should not be viewed as an encroachment upon federal domain because creditors still have access to federal bankruptcy laws after the assignment is made); Hanna, *Contemporary Utility of General Assignments*, 35 Va.L.Rev. 539, 550 (1949) (present state of the law seems to be that states may determine for themselves their jurisdiction over general assignments; although *Pinkus* case stressed the significance of discharge in insolvency law, it is still not clear that a state statute permitting the granting of a preference in exchange for a discharge is an invalid state insolvency law). *See also* Weintraub, Levin & Sosnoff, *Assignments for the Benefit of Creditors and Competitive Systems of Liquidation of Insolvent Estates*, 39 Cornell L.Q. 3, 24 (1953) (statute may not authorize discharge through assignment, but common law may approve creditor's agreement to discharge through assent to assignment).