SELYA, Circuit Judge.
 

 This case deals with the right of a lawyer, preliminary to submitting a client's petition under chapter 11 of the 1978 Bankruptcy Code (Code), to take security for the payment of attorneys’ fees to be incurred while representing the client in connection with the bankruptcy proceedings. It likewise inevitably deals with the propriety of such an act. Apropos of the central point at issue, directly pertinent precedent ranges from slim to none. So, we write on what amounts to a clean slate.
 

 I. BACKGROUND
 

 The facts relevant to this matter are not now in serious dispute. They have been elucidated both by the bankruptcy court,
 
 In re Martin,
 
 59 B.R. 140 (Bankr.D.Me.1986)
 
 {Martin I),
 
 and by the district court,
 
 In re Martin,
 
 62 B.R. 943 (D.Me.1986)
 
 {Martin II),
 
 and we draw heavily upon these earlier rescripts in our decurtate narration of the pivotal events.
 

 On November 27, 1984, Larry T. Martin and Cynthia J. Martin, then husband and wife, sought the advice of Yerrill & Dana (V & D), a law firm. The chief reason for the consultation was that the Martins found themselves in precarious financial straits because of the poor performance of their restaurant business. The outcome of this and a subsequent meeting was the debtors’ election to file a chapter 11 petition to reorganize the business in bankruptcy court. But, they were unable to muster sufficient ready cash to pay V & D the $5000 retainer which the law firm demanded.
 

 A bargain was struck between lawyers and clients whereby the Martins invested a mere $500 in a cash retainer and signed an open-ended demand note (Note) payable to V & D for $100,000. The Note provided for the payment of all indebtedness of the makers to the payee existing prior to (or created simultaneously with) execution and delivery, as well as all indebtedness to be incurred
 
 in futuro
 
 by reason of legal services to be rendered. The Note was secured by a second mortgage (Mortgage) on certain improved real estate owned by the debtors, located at 258 Summit St., Portland, Maine. These premises were used neither as the debtors’ principal residence nor for any business purpose associated with the running of the restaurant. According to their counsel, the land and buildings on Summit St. comprised property which the debtors did not intend to liquidate in the anticipated course of the chapter 11 reorganization. The bankruptcy court found that the debtors “enjoyed a substantial equity” in this real estate.
 
 Martin I,
 
 59 B.R. at 141.
 

 On December 11, 1984, not by coincidence, two events occurred: the Mortgage was recorded and V & D escorted Mr. and Mrs. Martin through the portals of chapter 11. Acting through the attorneys, the petitioners then sought permission from the bankruptcy court to employ V & D to represent them as debtors in possession. The application made a clean breast of the terms and conditions of the retainer and the other accoutrements of the fee arrangement as required by Bankruptcy Rule 2016(b). The particulars of the Note and Mortgage were revealed fully. On December 14, 1984, the bankruptcy court issued an order (Engagement Order) authorizing the employment of counsel “under general retainer of $500 at ... usual hourly rates.” The court did not mention the Note or Mortgage at that time. And, V & D proceeded to undertake the assignment without any reiteration to the bankruptcy judge of the request that the Mortgage be sanctioned.
 

 The debtors’ flirtation with chapter 11 was short-lived. Within six months, they voluntarily converted the action to a straight bankruptcy proceeding under chapter 7 of the Code. A trustee was appointed. Then, a flurry of activity took place as the parties in interest struggled to wind up the aborted chapter 11 case and to process the neoteric chapter 7 case.
 
 *177
 
 Among other things, V & D applied for interim fees anent the services it had rendered. The trustee, apparently believing that the Summit St. property was bereft of equity (if one counted the Mortgage as valid), sought permission to abandon it. The creditors’ committee objected.
 

 The bankruptcy court found that the Mortgage constituted an interest adverse to the bankrupts’ estate.
 
 Martin I,
 
 59 B.R. at 142-44. Accordingly, the court reasoned, V & D ran afoul of the mandate of § 327(a) of the Code which (with certain exceptions not germane to this case) allows the “employ[ment of] one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons,_” 11 U.S.C. § 327(a) (1978).
 
 [1]
 
 The court concluded that V & D was not “disinterested” and “should not have been employed as attorney[ ] for the debtors in possession ... without divesting itself of its interest in the debtors’ property.”
 
 Martin I,
 
 59 B.R. at 144. Though invalidating the Note and Mortgage, the court allowed V & D’s application for compensation and reimbursed expenses in large part, deleting only such items as were unreasonable, unnecessary, or prohibited (such as services and disbursements directly related to the preparation and rec-ordation of the Note and Mortgage).
 
 Id.
 
 at 144-45.
 

 This decree pleased no one. It was greeted by the filing of cross-appeals. The district court overruled the debtors’ appeal, albeit prudently declining to endorse the formulation of any broad or sweeping rule.
 
 Martin II,
 
 62 B.R. at 946-48. The district court found that it was “appropriate in this instance to defer to the expertise of the Bankruptcy Court in determining the severity” of the potential conflicts in interest between a given debtor and a lienholder lawyer.
 
 Id.
 
 at 948. The cross-appeal promoted by the creditors’ committee was rejected and the allowance of partial compensation to V & D was approved.
 
 Id.
 
 at 948-49.
 

 The creditors’ committee has taken no appeal to this court. The debtors, appellants before us, do press their claim that the Mortgage should not have been set aside. The point is not academic. If the Mortgage is upheld, the law firm will presumably be entitled to the now excluded fees for time spent on the Note and Mortgage. It will also have an improved chance of being paid whatever it has earned. Without the Mortgage, the priority accord-' ed to an administrative expense item,
 
 see infra
 
 n. 6, may not be enough. If the real estate equity must be shared with other administrative expense claimants, the bankrupt estate could prove insufficient to pay all of V & D’s fees. A preferred position vis-a-vis the Summit St. property would afford V & D an appreciably better likelihood of full payment.
 
 [2]
 

 II. DISCUSSION
 

 There are, essentially, two issues presented in connection with this appeal. First, the creditors’ committee, as appellee, asserts that the debtors’ failure to appeal the bankruptcy court’s initial Engagement Order barred them from challenging the later decrees which purported specifically to invalidate the Mortgage. Second, the appellants ask us to address the soundness of the decisions countermanding the Mortgage. We discuss each issue separately.
 

 
 *178
 
 A.
 
 Effect of the Engagement Order
 

 The asseveration that the debtors, by failing to appeal from the Engagement Order, somehow lost the right to complain of the subsequent invalidation of the Mortgage, is jejune. The Engagement Order merely authorized the employment of V & D “under general retainer of $500 at [the firm’s] usual hourly rates.” It did not purport to pass directly or indirectly on the propriety of the Mortgage. Although the appellee argues that the “implication” of the Engagement Order was to deny the debtors’ request for approval of the Mortgage, that implication — like many implications — lies mainly in the mind of the implier. It is based on the sheer gossamer of speculation and surmise, without the slightest record support.
 

 We need not linger long over the matter. We note, first, that the appellee chose not to raise this ground before either of the lower courts. That, in itself, is likely dis-positive of any argument: we have made it plain, as a usual rule, that points not raised below cannot be voiced for the first time on appeal.
 
 Curran v. Department of Justice,
 
 813 F.2d 473, 477 (1st Cir.1987);
 
 United States v. Ven-Fuel, Inc.,
 
 758 F.2d 741, 760 (1st Cir.1985);
 
 Nogueira v. United States,
 
 683 F.2d 576, 580 (1st Cir.1982);
 
 Johnston v. Holiday Inns, Inc.,
 
 595 F.2d 890, 894 (1st Cir.1979). We reaffirm this principle today. There is no call in the present circumstances to depart from such a salutary practice.
 

 In any event, the appellee’s claim of waiver is too wobbly to withstand even the mild breezes of cursory examination. At the time of, and after, the Engagement Order, there was nothing to appeal. The Mortgage remained intact and encumbered the property. V & D’s security interest, for what it might prove to be worth, was unimpaired. At that point in time, there was no reorganization plan and it was unclear whether the Summit St. property would enter into the chapter 11 calculus at all. It is not difficult to imagine that, had there been a successful reorganization within chapter 11, fee provisions might have been included and the lien issue might have become moot. It was not until the ease slid onto the rocky lee shore of straight bankruptcy — well after the entry of the Engagement Order — that the Mortgage became a matter of unavoidable concern.
 

 To be sure, bankruptcy appeals, unlike many other kinds of appeals, can frequently be heard on an interlocutory basis, that is, before the entire case has been resolved. In this circuit, that result follows in part from the gloss which we have placed upon the “collateral order” rule,
 
 see Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949), in bankruptcy matters.
 
 E.g., In re American Colonial Broadcasting Corp.,
 
 758 F.2d 794, 803 (1st Cir.1985);
 
 In re Saco Local Development Corp.,
 
 711 F.2d 441, 443-48 (1st Cir.1983). Even so, at the time of the Engagement Order, any possible dispute concerning the Mortgage was far too amorphous to warrant immediate appeal. At most, the bankruptcy court’s action on December 14, 1984 constituted a first step along the road, an interlocutory order entered in the course of what might — and later did — become a discrete dispute
 
 (i.e.,
 
 whether or not the Mortgage was valid and enforceable).
 
 See In re Empresas Noroeste, Inc.,
 
 806 F.2d 315, 316-17 (1st Cir.1986) (denial of motion to dismiss trustee’s suit to set aside mortgage not immediately appealable);
 
 cf. In re Continental Investment Corp.,
 
 637 F.2d 1, 4-7 (1st Cir.1980) (denial of motion to disqualify creditor’s counsel not immediately appealable). It was only when
 
 Martin I
 
 was decided that there occurred the maturation of the requisite “discrete dispute[] within the larger case.”
 
 Saco Local Development Corp.,
 
 711 F.2d at 444. Not until then were the debtors faced with an “order that conclusively determines a separable dispute.”
 
 Id.
 
 And, not until such an order was in hand did the opportunity to seek appellate review become a reality.
 

 We hold that the appellants did not forfeit their right to question invalidation of the Mortgage by neglecting to appeal the Engagement Order. Any such endeavor would have been both premature and fruit
 
 *179
 
 less. Thus, we are obliged to confront the appellants’ assignment of error squarely on the merits.
 
 [3]
 

 B.
 
 Validity of the Mortgage
 

 As mentioned before,
 
 see supra
 
 at 5 & n. 1, the Code empowers the bankruptcy court to approve the employment of counsel by chapter 11 debtors in possession. The terms and tenor of 11 U.S.C. § 327(a) mandate that such counsel must be “disinterested persons” who do not possess any “interest adverse to the estate.”
 
 See generally
 
 2
 
 Collier on Bankruptcy
 
 327-01 (15th ed. 1985). It can readily be appreciated that the concepts of disinterest on the one hand, and materially adverse interest, on the other hand, are somewhat intertwined.
 
 [4]
 
 The Code does not provide express guidance by purporting to define the latter term. It does, however, explain the former — but in such a way as to emphasize, rather than to unknot, the imbrication between the concepts. A “disinterested person” is one who:
 

 (A) is not a creditor, an equity security holder, or an insider; ...
 

 [[Image here]]
 

 (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason.
 

 11 U.S.C. § 101(13).
 

 Though it might seem evident that 11 U.S.C. § 327(a) controls the question of whether or not the Mortgage is enforceable, the debtors dare to differ. They advance a rather curious argument to the effect that §§ 328 and 329 of the Code “presuppose” that an attorney may take a security interest in a debtor’s property to ensure the payment of legal fees, thereby removing such a transaction from the rigors of § 327. Their logic is totally unconvincing.
 

 It is true, as the appellants intone, that § 328(a) allows the employment of counsel “with the court’s approval ... on any reasonable terms and conditions.” But, adverting to that statute begs the question: the reasonableness of a pivotal “condition” of employment is precisely what is at issue in this case. Nothing in § 328(a) insinuates that the engagement power conferred thereunder exempts attorneys so appointed from passing through the disinterestedness checkpoint erected by § 327(a).
 

 The appellants’ attempt to build their case upon § 329 is even more shortsighted. Section 329(a) provides in pertinent part that the debtor’s counsel must file “a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation.” Section 329(b) authorizes the court, if it finds such compensation to be overgener-’ ous, to “cancel any such agreement, or order the return of any such payment, to the extent excessive,.... ” Bankruptcy Rule 2017(a) implements § 329(b). It stipulates that:
 

 
 *180
 
 On motion by any party in interest or on the court’s own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to any attorney for services rendered or to be rendered is excessive.
 

 Because these provisions furnish the court with express power to review payments to attorneys for excessiveness and to restore the status quo when assets have improvidently been bartered for legal services, the debtors baldly assert that the court is stripped of its more general oversight powers under § 327 vis-a-vis the validity of such fee arrangements. Not surprisingly, they make this assertion without meaningful citation of authority.
 

 This contention completely overlooks the bankruptcy court’s fundamental responsibility to monitor the integrity of the proceedings before it. In light of the duty explicitly imposed on the bankruptcy court by § 327 — a duty which demands that the court root out impermissible conflicts of interest between attorney and client — the argument that § 329 shaves the authority that § 327 plainly requires is best dismissed as wishful thinking. Neither § 328 nor § 329 of the Code can be read as playing Delilah to the Samson of § 327; it is sheer sophistry to contend that the former sections trim the latter so as to reduce its potency in any relevant way. We hold unhesitatingly that § 327 remains hirsute. The provisions upon which the debtors rely do not rob the bankruptcy court of its power — or dilute its responsibility — to ensure that the disinterestedness requirement is heeded.
 

 We turn, then, to a fuller consideration of § 327(a). At first blush, this statute would seem to foreclose the employment of an attorney who is in any respect a “creditor.” But, such a literalistic reading defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on account. Thus, to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance for a debtor in possession, except under a cash- and-carry arrangement or on a
 
 pro bono
 
 basis. It stands to reason that the statutory mosaic must, at the least, be read to exclude as a “creditor” a lawyer, not previously owed back fees or other indebtedness,
 
 [5]
 
 who is authorized by the court to represent a debtor in connection with reorganization proceedings — notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.
 
 Accord In re Roberts,
 
 46 B.R. at 849;
 
 In re Roamer Linen Supply, Inc.,
 
 30 B.R. 932, 935 (Bankr.S.D.N.Y.1983).
 

 When construed in this fashion, the twin requirements of disinterestedness and lack of adversity telescope into what amounts to a single hallmark. Phrasing the standard in terms of the case at bar, the bankruptcy court was bound to inquire whether the acceptance of the Mortgage by V & D created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors — an incentive sufficient to place those parties at more than acceptable risk — or the reasonable perception of one. The test is not dependent upon the presence of connivance or overreaching. Malfeasance has not been suggested, let alone shown. No one contends that, in this case, the chicken coop had been entrusted to the fox, or that V & D had impure motives, or that the firm was swayed in its judgments or actions by the existence of the Mortgage. There is nothing to indicate that counsel’s attention to the concerns of the debtors’ estate was somehow diminished. Section 327 is intended, however, to address the appearance of impropriety as much as its substance, to
 
 *181
 
 remove the temptation and opportunity to do less than duty demands. As one court has phrased it:
 

 There is no question that the purpose of the incorporation of the disinterest requirement of 11 U.S.C. § 327 was to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration. Certainly a ‘disinterested’ person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.
 

 In re Codesco, Inc.,
 
 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982).
 
 See also Matter of Consolidated Bancshares, Inc.,
 
 785 F.2d 1249, 1256 n. 6 (5th Cir.1986) (“standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process”);
 
 In re Philadelphia Athletic Club, Inc.,
 
 20 B.R. 328, 334 (E.D.Pa.1982) (“professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest”); 2
 
 Collier on Bankruptcy, supra,
 
 at 327-20. (“The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration.”)
 

 We acknowledge that the Code is less than explicit in mapping the contours of the disinterestedness requirement. Although it is easy to spot situations which fall at either end of the spectrum,
 
 see, e.g., In re Whitman,
 
 51 B.R. 502 (Bankr.D.Mass. 1985) (security agreement taken by law firm, covering debtor’s equipment, invalidated because of overreaching and failure to disclose), there is a scumbled area in the center which cannot easily be color-coded. We realize that any attorney — other than one working purely as a volunteer — has a financial interest in the matters entrusted to his care, so in that sense, there is always some danger that the lawyer’s judgment will be shaded by his own economic welfare. Yet, that risk, standing alone, seems acceptable. At the opposite pole, we find it strikingly evident that § 327(a) would be drained of its meaning if bankruptcy counsel were free, willy-nilly, to set aside for themselves the most promising assets of the estate as a precondition to handling a chapter 11 proceeding. That risk is, of course, anathema.
 

 Once this tension is acknowledged, it is a small step to recognize that 11 U.S.C. § 327(a) will not support, either by its terms or by its objectives, a bright-line rule precluding an attorney at all times and under all circumstances from taking a security interest to safeguard the payment of his fees. It will sometimes be difficult to obtain competent counsel in anticipation of a bankruptcy proceeding unless the lawyer’s financial wellbeing can be assured to some extent. All too often, debtors — who are, almost by definition, prone to be in somewhat straitened circumstances — may be unable to furnish cash retainers. Even if it is theoretically possible for a particular debtor to do so, such an outlay may siphon off needed funds in such a way as to hamstring legitimate efforts to reorganize under chapter 11. Conversely, the fundamental objectives of chapter 11 may be thwarted if property essential to a reorganization is tied up by an attorney’s lien, or if a particular security arrangement (or the perception which it naturally engenders) impairs fair treatment either of creditors or of administrative expense claimants. Reason requires that a balance be struck.
 

 Thus, faithful to our view of Congress’s intent and to the “overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction,”
 
 Bank of Marin v. England,
 
 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966), we eschew the affixation of pejorative labels to the kind of mortgage arrangement entered into between the debtors and V & D. We are not prepared to say across the board that a retainer of this type is good— or bad — in every instance. In the final analysis, if we are to animate the authentic purposes of § 327(a), it is the bankruptcy court — not the debtor and his counsel— which must separate good from bad, which must determine the propriety of permitting
 

 
 *182
 
 a mortgage or other preferential lien
 
 [6]
 
 in the lawyer’s favor to stand. The naked existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant.
 
 Accord In re Guy Apple Masonry Contractor, Inc.,
 
 45 B.R. 160, 166 (Bankr.D.Ariz.1984);
 
 Matter of Georgetown Kettering, Ltd.,
 
 28 B.R. 120, 126 (Bankr.S.D.Ohio 1983). It is for the court to decide whether the attorney’s proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action (say, disqualification or disgorgement or invalidation of a lien). Sincerity or protestations of good faith, no matter how genuine, will not be enough. The test must be more an objective one. The question is not necessarily whether a conflict exists — although an actual conflict of any degree of seriousness will obviously present a towering obstacle — but whether a potential conflict, or the perception of one, renders the lawyer’s interest materially adverse to the estate or the creditors.
 
 See Guy Apple,
 
 45 B.R. at 166.
 

 This inquiry is of necessity case-specific. There must be at a minimum full and timely disclosure of the details of any given arrangement. Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether the security interest coveted by counsel can be tolerated under the particular circumstances. In so doing, the court should consider the full panoply of events and elements: the reasonableness of the arrangement and whether it was negotiated in good faith, whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services, whether it was a needed means of ensuring the engagement of competent counsel, and whether or not there are telltale signs of overreaching. The nature and extent of the conflict must be assayed, along with the likelihood that a potential conflict might turn into an actual one. An effort should be made to measure the influence the putative conflict may have in subsequent decisionmaking. Perceptions are important; how the matter likely appears to creditors and to other parties in legitimate interest should be taken into account. There are other salient factors as well: whether the existence of the security interest threatens to hinder or to delay the effectuation of a plan, whether it is (or could be perceived as) an impediment to reorganization, and whether the fundamental fairness of the proceedings might be unduly jeopardized (either by the actuality of the arrangement or by the reasonable public perception of it).
 

 This list is, of course, not designed to be all-inclusive. What counts is that the matter not be left either to hindsight or the unfettered desires of the debtor and his attorney, but that the bankruptcy judge be given an immediate opportunity to make an intelligent appraisal of the situation and to apply his experience, common sense, and knowledge of the particular proceeding to the request. If a lawyer is desirous of benefiting from such an arrangement, he has a responsibility to leave no reasonable stone unturned in bringing the matter to a head at the earliest practical moment.
 

 Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals.
 
 E.g., In re Consolidated Bancshares, Inc.,
 
 785 F.2d at 1252;
 
 In re Nucorp Energy, Inc.,
 
 764 F.2d 655, 657 (9th Cir.1985);
 
 Southwestern Media, Inc. v. Rau,
 
 708 F.2d 419, 422 (9th Cir. 1983);
 
 Matter of Triangle Chemicals, Inc.,
 
 697 F.2d at 1286-89;
 
 Stolkin v. Nachman,
 
 472 F.2d 222, 228 (7th Cir.1973);
 
 In re Botelho,
 
 8 B.R. 305, 306 (Bankr. 1st Cir. 1981). The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails. If he perceives a material
 
 *183
 
 ly adverse interest, he has at his disposal an armamentarium of permissible remedies, including (but by no means limited to) disqualification, disallowance of all or some fees, and invalidation of the security interest.
 

 To sum up, each situation must be judged prospectively on its own merits. A mortgage should not be upheld simply because, after the fact, no harm appears to have been done. As we have indicated, the
 
 potential
 
 for conflict and the
 
 appearance
 
 of conflict, without more, can justify cancellation of such a security interest. Yet, horrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending counsel away to lick his wounds. And, when all is said and done, doubts are to be resolved in favor of invalidation.
 
 Cf. In re Pierce,
 
 53 B.R. 825, 828 (Bankr.D.Minn.1985) (if attorney representing chapter 11 debtor not disinterested, “he is not ordinarily entitled to be employed by the estate or receive any compensation”).
 
 [7]
 
 As Justice Cardozo once wrote, a fiduciary must be “held to something stricter than the morals of the marketplace .... ”
 
 Meinhard v. Salmon,
 
 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).
 

 Having set this general tone, we return to the case before us. The bankruptcy court determined that the Mortgage constituted a materially adverse interest within the meaning of § 327(a). That finding appears to have stemmed from application of a
 
 per se
 
 rule.
 
 E.g., Martin I,
 
 59 B.R. at 143-44. Having in mind our rejection of such an inflexible standard, we believe that we should return this matter to the bankruptcy court, so that judgment may be rendered in accordance with the facts as found by the bankruptcy judge and the rule which we have announced today.
 

 III. CONCLUSION
 

 We hold that the issue pertaining to the propriety of the secured retainer agreement entered into between the debtors and V & D was properly preserved for appellate review. The Martins did not waive the right to complain concerning invalidation of the Mortgage by failing to press an appeal at an earlier stage.
 

 Having reached the merits of the appeal, we do not find that the grant of the Mortgage to the law firm as security for the payment of its fees was impermissible
 
 per se.
 
 We hold, however, that the bankruptcy court, in the exercise of its sound discretion, must assess the appropriateness of the Mortgage against the backdrop of the litigation. Accordingly, remand is indicated. We do not imply that remand will or will not alter the result; that is not for us to say. We vacate the judgment of the district court and return the case to it for further proceedings not inconsistent herewith.
 

 Vacated and remanded. No costs.
 

 [1]
 

 . Although § 327(a), by its terms, speaks of representing "the trustee,” 11 U.S.C. § 1107(a) (1978) makes § 327(a) applicable to attorneys appointed to assist chapter 11 debtors in possession.
 
 See Matter of Triangle Chemicals, Inc.,
 
 697 F.2d 1280, 1284 (5th Cir.1983) (§ 1107(a) "places the debtor in possession in the shoes of a trustee in every way”).
 

 [2]
 

 . We have concluded for these reasons that this matter is neither moot nor unripe. Standing is a closer question. After this appeal had been briefed and argued, a panel of this court decided
 
 In re El San Juan Hotel,
 
 809 F.2d 151 (1st Cir.1987), articulating (for the first time in this circuit) a specific rule of appellate standing anent bankruptcy proceedings. When we specifically called
 
 San Juan Hotel
 
 to the attention of the parties, the creditors’ committee eschewed any such challenge. Two members of the present panel believe that the appellants have shown that they are sufficiently aggrieved to warrant standing
 
 {e.g.,
 
 they may avoid immediate sale of the Summit St. property if the Mortgage is valid), and we so hold. We note, however, that the third member,
 
 dubitante,
 
 is skeptical of the existence of standing within the strict parameters of our new rule.
 

 [3]
 

 . We are constrained to observe that the creditors' committee has been of no discernible assistance to its cause on appeal. Faced with a tricky issue, appellee’s counsel elected to file a tiny five page brief which addressed only the procedural point just explicated. This approach disserved both the client and the reviewing court. Although we do not invite makework, we expect that members of our bar will address known issues fairly presented on appeal with care and attention.
 

 [4]
 

 . We are not the first court to discern “something of a redundancy” in the Code's definition of "disinterestedness," 11 U.S.C. § 101(13), and the apparently separate requirement of no adverse interest. 11 U.S.C. § 327(a).
 
 See In re Roberts,
 
 46 B.R. 815, 828 (Bankr.D.Utah 1985). Section 327(a) undoubtedly establishes a binary test for approval of general counsel in chapter 11 reorganizations.
 
 See Matter of the Cropper Company, Inc.,
 
 35 B.R. 625, 631 (Bankr.M.D.Ga. 1983);
 
 In re Leisure Dynamics,
 
 33 B.R. 121, 122 (D.Minn.1983). It is simply with respect to the requirement of no adverse interest that the two prongs of this test are duplicative. "[E]ither prong of section 327(a) requires an attorney employed by a debtor in possession to be free of ... actual and potential conflicts of interest.”
 
 Cropper Company, supra,
 
 at 631.
 
 Accord In re Roberts,
 
 46 B.R. at 822-23.
 

 [5]
 

 . The performance of standard prepetition services,
 
 i.e.,
 
 preliminary work routinely undertaken to facilitate an upcoming chapter 11 filing, will not serve to disqualify an otherwise eligible attorney.
 
 See In re Roberts,
 
 46 B.R. at 849.
 

 [6]
 

 . It must be remembered that, in bankruptcy, counsel already enjoy a statutory preference of sorts. To the extent that legal fees mirror services rendered to or on behalf of the estate, the charges are allowable as administrative expenses under 11 U.S.C. §§ 330, 503, 507. Thus, when attorneys arrange additional security for their own benefit, they enjoy not merely a preference, but an
 
 extra
 
 preference.
 

 [7]
 

 . The appellants cite only a single instance in which a security interest, though challenged, was left intact by a reviewing tribunal in circumstances at all analogous to those at bar.
 
 See In re Pacific Far East Line, Inc.,
 
 644 F.2d 1290 (9th Cir.1981).
 
 Pacific
 
 antedated the enactment of § 327(a) and the disinterestedness requirement imposed therein. It is therefore of minimal precedential value. And, it does not avail the appellants that former Bankruptcy Rule 215 contained a provision barring adverse interests; the
 
 Pacific
 
 court neither referred to, nor discussed, that Rule. In sum, we consider
 
 Pacific
 
 to be oceans away from the present point.