In re LYONS TRANSPORTATION
LINES, INC., et al., Debtor.

Vedder J. WHITE, Trustee, Plaintiff,

v.

Jonathan TENDLER, Defendant
and Third Party Plaintiff,

v.

COMMON BROTHERS, INC., Third
Party Defendant. (Two Cases)

LYONS TRANSPORTATION
LINES, INC., Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COM-
PANY, Liberty Mutual Fire Insurance
Company, Liberty Insurance Corpora-
tion and Liberty Mutual Insurance
Group, Defendants.

LIBERTY MUTUAL INSURANCE,
Movant,

v.

LYONS TRANSPORTATION LINES,
INC., et al., Respondents.

Jonathan TENDLER, Movant,

v.

Vedder J. WHITE and Elderkin, Martin,
Kelly & Messina, Respondents. (Two
Cases)

Robert CASTELLO, Thomas Farrell
and Management Concepts, Inc.,
Movants,

v.

Vedder J. WHITE and Elderkin, Martin,
Kelly & Messina, Respondents. (Two
Cases)

Vedder J. WHITE, Trustee, Movant,

v.

NO RESPONDENT. (Two Cases)

In re JRC ACQUISITION
CORPORATION,
Debtor.

Bankruptcy Nos. 90–00768E, 90–00772E.
Motion Nos. 91–917, 92–GMF–
1, MED–1 and EMK–7.
Adv. Nos. 91–0116, 91–0048.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 27, 1992.

Vedder J. White, Erie, Pa., Trustee.

Gregg M. Feinberg, Allentown, Pa., for Jonathan Tendler.

Michael E. Dunlavey, Erie, Pa., for Robert Castello, Thomas Farrell, and Management Concepts, Inc.

F. Scott Gray, Pittsburgh, Pa., for Creditors' Committee.

Harry D. Martin, Erie, Pa., for trustee.

Kirk C. Katchen, Erie, Pa., for Liberty Mut. Ins.

Lawrence C. Bolla, Erie, Pa., for Allstate Financial Corp.

Diana Thimmig, Cleveland, Ohio, for Sherwin–Williams Co.

Thomas P. Agresti, Erie, Pa., for Michael E. Coslit.

James Blackwood, Erie, Pa., for Fred Kirschner.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

We have before us the following matters:

1. The Trustee's Motion for approval of settlement with Sherwin–Williams Company by Vedder J. White, Esq. as Trustee of Lyons Transportation Lines, Inc. ("Lyons") and by Vedder J. White, Esq. as Trustee of JRC Acquisition Corporation ("JRC").

2. Reconsideration of the Order approving the Trustee's settlement with Liberty Mutual Insurance Company with Vedder J. White, Esq. as Trustee of Lyons, Inc. (but not as Trustee of JRC).

3. The Motions of Jonathan Tendler, Robert Castello, Thomas Farrell and

Management Concepts, Inc. (collectively the "Movants") for disqualification of Vedder J. White, Esq. as Trustee and his counsel, Elderkin, Martin, Kelly & Messina ("Elderkin, Martin"), because of an alleged conflict of interest between White's duties as Trustee of Lyons and his duties as Trustee of JRC.

## DISCUSSION

### Disqualification of Trustee and Counsel

The Movants are Defendants in certain other lawsuits brought by the Trustee. Tendler, Castello and Farrell are the shareholders of JRC. Castello and Farrell were doing business under or as shareholders of Management Concepts, Inc. The Movants assert in general terms that the interests of JRC are different than the interests of Lyons. They assert that an independent trustee of JRC would not settle with either Liberty Mutual or Sherwin–Williams, because the Trustee's settlement is inadequate and that an adequate settlement would pay off all creditors of JRC and would yield a return to the stockholders of JRC.

■ An interim trustee must be a "disinterested person."[1] 11 U.S.C. § 701. However, a trustee is not disqualified because of an action taken in a representative capacity (i.e., a trustee asserting a claim in a representative capacity is not a "creditor" for purposes of § 101(14)(A)). *In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir.1991).

■ § 101(14)(E) provides a more general disinterest provision. The Third Circuit, following the approach taken in *In re Martin*, 817 F.2d 175 (1st Cir.1987), has determined that interdebtor claims do not man-

date disqualification of the trustee in every instance in which a trustee presides over related cases. *Id.* Each case involving a single trustee for related estates must be evaluated to determine not whether a conflict exists—but whether the conflict renders the trustee's interest materially adverse to the estate. *In re BH & P*, 949 F.2d at 1312.

The transaction out of which all of this litigation arises is the sale of the stock of Lyons. Sherwin–Williams owned all of the stock of Lyons and on June 1, 1990, Sherwin–Williams sold all of the stock of Lyons to JRC. The purchase price was $7.8 million. In order to pay the purchase price, JRC had Lyons borrow $1.6 million on Lyons' accounts receivable and pay the $1.6 million to Sherwin–Williams; also, JRC caused Lyons to execute notes in the amount of $6.2 million and mortgages in favor of Sherwin–Williams pledging substantially all of the assets of Lyons to Sherwin–Williams to secure JRC's purchase obligation. Hence, the Lyons–Trustee's claim against Sherwin–Williams for the transfer of Lyons' assets to Sherwin–Williams in payment of a debt which Lyons did not owe is well-founded.

The JRC schedules show that JRC's only asset was a $2 million account receivable; the schedules do not indicate the obligor. The obligor may be Sherwin–Williams. JRC also executed the notes in favor of Sherwin–Williams for which Lyons provided the collateral. It is argued that JRC has a claim against Sherwin–Williams for misrepresentation and that such claim is so large as to offset the large claims of Sherwin–Williams against JRC. However, the argument fails to recognize that the other

---

1. 11 U.S.C. § 101(14) provides as follows:

(14) "disinterested person" means person that—
(A) is not a creditor, an equity security holder, or an insider,
(B) is not and was not an investment banker for any outstanding security of the debtor;
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

large creditor of JRC is Lyons. Lyons provided $1.6 million in cash to pay a debt of JRC plus a $4.2 million mortgage encumbering its property and causing substantial difficulties in this case.

The fact that White as trustee of Lyons has a claim against JRC does not bar White from acting as trustee of JRC. White has no claim personally as a creditor of JRC and hence, has no personal interest. *See In re BH & P*, 949 F.2d at 1309.

If there were an election of trustee in the JRC case, the election would be controlled by the estate of Lyons and by Sherwin–Williams since they are the only two creditors. The claim of Sherwin–Williams is disputed; hence, 11 U.S.C. § 702(a) precludes Sherwin–Williams from voting for a trustee. The Lyons' Trustee would therefore control the election of the trustee in the JRC case. Representation of a creditor is not a disqualification for the position of Trustee or counsel to the Trustee. Indeed, in the within case, it is apparent that the real parties in interest are the creditors of Lyons. If the Trustee in Lyons is to settle with Sherwin–Williams, it is appropriate for him also to secure a settlement of JRC's claims and liabilities, so that any money going to or from JRC would benefit the creditors of Lyons.

We conclude that White's obligation to pursue claims on behalf of both JRC and Lyons does not create any material adverse interest and that White is therefore not disqualified in either the Lyons case or the JRC case.

We next turn to the allegation that Elderkin, Martin, the attorneys representing White in the two related proceedings, should be removed as counsel in the JRC matter.

On the face of it, it appears that Elderkin, Martin are barred by § 327(a) from representing the JRC trustee because they also represent the Lyons' estate which has a claim against JRC. § 327(a) requires that counsel not hold an interest adverse to the estate.

However, "[t]he existence of interdebtor claims is … no longer an automatic dis-

qualification of counsel for the trustee." *In re BH & P*, 949 F.2d at 1314. The Third Circuit further stated:

We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals. In this context, as in the case of removal of a trustee, we reiterate that "historically, bankruptcy courts have been accorded wide discretion in connection with … the terms and conditions of the employment of professionals," *In re Martin*, 817 F.2d at 182, and affirm that the conflict of interest principles which we have adopted regarding disqualification of trustees apply with equal force in those situations involving employment of professionals. This flexible approach will require the bankruptcy courts to analyze the factors present in any given case in order to determine whether the efficiency and economy which may favor multiple representation must yield to competing concerns affecting fairness to all parties involved and protection of the integrity of the bankruptcy process.

*In re BH & P*, 949 F.2d at 1316.

There are only two claims against the JRC estate; one is by Sherwin–Williams, a former insider holding a disputed claim, and one is by the Lyons' estate. The Lyons' trustee is hostile to Sherwin–Williams. We think that the primary or sole interest of Elderkin, Martin is the collection of funds for distribution to the creditors of Lyons. Sherwin–Williams' interest is tainted by its former role as an insider and the dispute over its claim and the Trustee's claim against it, so it should have no voice; its claims are, in any event, being wiped out by the proposed settlement. Thus, Elderkin, Martin has no conflict in representing the trustee of Lyons and the trustee of JRC, since its primary interest is to get money into the Lyons' estate for the benefit of its creditors.

Tendler's implied argument that counsel for the JRC trustee would or should pursue Sherwin–Williams for a better settlement, or litigate, is unpersuasive. It also ignores the practical fact that JRC has absolutely

no cash or assets on hand with which to fund a lawsuit against Sherwin–Williams. The possibility of an independent attorney for JRC, operating without funds, could obtain additional amounts from Sherwin–Williams, over and above the concessions in the proposed settlement, are remote.

For the above reasons, we will refuse the motions for disqualification of the Trustee and his counsel.

### Liberty Mutual Settlement

■ Jonathan Tendler opposes the Trustee's settlement with Liberty Mutual Insurance Company. Tendler had not filed a request for notices and did not receive notice of the hearing on the settlement. Upon voicing an objection at a later date, the Court issued its Order convening a hearing for the purpose of reconsideration of that Order.

Tendler asserts that Liberty Mutual unlawfully terminated Lyons' insurance and advised Lyons' customers thereof and caused enormous damage to Lyons. The damage is asserted to be in the millions of dollars. Tendler also asserts that even if there are no actual damages, punitive damages could be obtained in a large amount.

The Trustee has settled the matter for a consideration which he considers to have a value of approximately $300,000, although at least $100,000 was a return to the Debtor of a deposit made with the District Court during the course of the lawsuit.

The Trustee states that his basis for the settlement was his inability to prove damages; that while liability of Liberty Mutual might be clear, the Trustee's review of the business records of the Debtor indicate that, while there was an immediate slight slump in the Debtor's business, there was also an immediate rebound and the Debtor's business continued to improve after the offensive act and that at trial he would be unable to prove any damages.

We note that the Trustee's counsel could seek engagement to bring the lawsuit and charge an hourly fee for work on that litigation to his own benefit and to the detriment of the estate. The Trustee has taken the approach that it benefits the es-

tate to settle the matter on the terms set forth in the stipulation of settlement.

The Trustee's analysis, based *not* upon general characterizations of the amount of damage, but upon the actual business records of the Debtor, carries substantial weight. The Trustee's motion to approve the settlement with Liberty Mutual will be reapproved.

### Sherwin–Williams Settlement

■ Under the proposed settlement, Sherwin–Williams would release its mortgages on Lyons' properties and subordinate all of its claims until priority creditors are paid and unsecured nonpriority creditors receive a dividend of 60%; Sherwin–Williams would also indemnify the bankruptcy estate for claims made by the Ohio Bureau of Workers Compensation and claims for personal injury lawsuits, which claims total $4,900,000.

Sherwin–Williams has filed claims in the within estate exceeding $15 million and if it is successful in these various claims, then there will be little if anything for creditors.

The trustee suggests that the sale of the various properties of Lyons, now subject to the Sherwin–Williams; mortgages, will yield sufficient amounts to pay unsecured nonpriority creditors a 60% dividend.

The amount of money in the estate is insufficient at the present time to pay wage claimants their priority claims together with administration expenses; it is insufficient to make any payment to unsecured creditors. If the litigation against Sherwin–Williams proceeds, and is lost, additional substantial litigation expenses will be incurred and the $4.2 million mortgage of Sherwin–Williams on the assets of the Debtor might remain intact.

The Creditors' Committee opposes the settlement and has invested substantial time in its analysis of the facts and presenting argument.

The Creditors' Committee asserts that, since the Trustee's position is that at the time of the closing on June 1, 1990, Lyons was insolvent and therefore, since Sher-

win–Williams sold an insolvent company, it is liable for its debts. But the issue in suing Sherwin–Williams is not whether Lyons was insolvent on the date that its stock was sold by Sherwin–Williams to JRC; the issue is whether there was any misrepresentation in that sale. The Creditors' Committee does not suggest any fact to show that there was a misrepresentation by Sherwin–Williams.

The Creditors' Committee makes another assertion which is important. It asserts that Sherwin–Williams so managed Lyons during the time that Sherwin–Williams owned its stock, that Sherwin–Williams may now be held liable as the alter ego of Lyons. This is a significant issue because if the Trustee were to win such a point, then the $14 million claim of Sherwin–Williams against the estate is meaningless and all of the Lyons' creditors can be made whole. However, the Creditors' Committee's assertions of fact, even if proven, fall short of showing the kind of conduct which would lead to an alter ego liability.

In support of its theory, the Creditors' Committee asserts:

That Sherwin–Williams owned all the stock of Lyons;

That Sherwin–Williams appointed the officers of Lyons;

That Sherwin–Williams had control over Lyons such that Sherwin–Williams could change the officers of Lyons at will;

That Sherwin–Williams was able to change the title of one particular officer;

That Sherwin–Williams removed the treasurer's title from the treasurer at Lyons because Sherwin–Williams only had one treasurer;

That Sherwin–Williams fired and released all of the officers of Lyons at one time;

That Sherwin–Williams ran Lyons for approximately one year with no corporate officers at Lyons;

That during that time, the controller at Lyons reported directly to the division controller of Sherwin–Williams;

That the Committee believes that there are no minutes or board meetings during the period of time Lyons owned the Sherwin–Williams' stock;

That Sherwin–Williams took assets from Lyons, including cash and equipment;

That the cash accounts were swept from the Lyons' account to the Sherwin–Williams' account and when Lyons paid a bill, Sherwin–Williams funded that account; (there is no allegation that separate records were not kept); apparently, the account used was a Lyons' account;

That prior to the sale of the stock, Sherwin–Williams had taken an operating subsidiary of Lyons known as C.D.S.I. and kept it as a Sherwin–Williams' subsidiary;

That Sherwin–Williams directed Lyons' personnel as to how to prepare certain financial information.

Even if all of these suggested allegations were proved, it is doubtful that alter ego liability would be established rendering Sherwin–Williams liable for all of Lyons' debts. Recovery under the alter ego theory requires that the "controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." *Culbreth v. Amosa (PTY) Ltd.*, 898 F.2d 13, 14 (3d Cir.1990). Even accepting the Creditors' Committee's allegations as fact, we see none of the over-reaching, the mixing of assets, the mixing of liabilities, or the failure to observe the delineations of corporate governance which are necessary to the imposition of alter ego liability.

The Committee also points out that the balance sheet of the Debtor shows a $9 million net worth at the date of June 1, 1990, whereas in fact, the company was insolvent. The Committee alleges that the insolvency stems from overstated assets and unrecorded liabilities such as a withdrawal liability on pension plans and liability for workmen's compensation insurance payments.

However, the shortfall was not shown to have been because of any fact misrepresented by Sherwin–Williams in the transaction with JRC. It appeared more likely that the JRC personnel handling the purchase had

little regard for the potential liabilities; after all, they were not spending their own money (other than the $600,000 advanced by Mr. Kirschner). The Trustee's motion and proposed settlement impressed the Court as marks of good advocacy with appropriate recognition of the pitfalls of litigation and the proposed settlement should be, and will be, approved.

## ORDER

In accordance with the Opinion filed herewith, it is ORDERED as follows:

1. The motion of Jonathan Tendler to disqualify Vedder J. White, Esq. and his counsel is refused.

2. The motion of Robert Castello, Thomas Farrell and Management Concepts, Inc. to disqualify Vedder J. White, Esq. and his counsel is refused.

3. The Trustee's settlement with Liberty Mutual Insurance Company, after being reconsidered, is reapproved.

4. The Trustee's motion for approval of stipulation of settlement with Sherwin–Williams Company shall be, and hereby is, approved.