408 B.R. 1 (2009)
CK LIQUIDATION CORPORATION, Debtor.
Robert White, Appellant,
v.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Appellee.
BAP No. 08-089. Bankruptcy No. 03-44906-HJB.
United States Bankruptcy Appellate Panel for the First Circuit.
July 2, 2009.
*3 Robert White, pro se, on brief for Appellant.
Richard E. Mikels, Esq., and Charles W. Azano, Esq., on brief for Appellee.
Before HAINES, VOTOLATO, and DE JESÚS, United States Bankruptcy Appellate Panel Judges.
VOTOLATO, Bankruptcy Judge.
Robert White (the "Appellant"), an unsecured creditor of CK Liquidation Corporation (the "Debtor"), appeals pro se from the bankruptcy court's order ("Final Fee Order") allowing in part the final application filed by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin"), for fees and expenses incurred as special counsel to the chapter 7 trustee. The Appellant does not challenge the reasonableness of the fees and costs awarded. Rather, he argues that the bankruptcy court's award of any fees or costs to Mintz Levin constituted legal error. For the reasons discussed below, we conclude that the arguments and issues raised by the Appellant are without merit and that the bankruptcy court did not err in awarding the fees and costs disputed. Therefore, the order appealed from is AFFIRMED.

BACKGROUND

A. Mintz Levin's involvement in the case
The Debtor filed a chapter 11 case in August 2003 and, shortly thereafter, requested an order authorizing the sale of substantially all of its assets. The Appellant objected to the sale, the bankruptcy court overruled his objection, and the property was sold to Kubotek Corporation in December 2003 in accordance with the order authorizing the sale (the "Sale Order").[1] Another pro se creditor, Harold L. Bowers, had also objected to the sale, but that objection was resolved in a settlement with the unsecured creditors committee and others. The chapter 11 case was subsequently converted to chapter 7, and John A. Burdick, Jr., was appointed as trustee.
The Appellant and Bowers separately sought to vacate the Sale Order through a litany of motions and objections.[2] In one such motion (the "Fraud Motion"), Bowers alleged, among other things, that two law firms, Ropes & Gray, LLP ("R & G"), and Sherin and Lodgen, LLP ("S & L"), had committed "fraud in the inducement of the settlement" and "fraud on the court." At the time Bowers filed the Fraud Motion, S & L was serving as counsel to the Trustee. Because the Fraud Motion included allegations against S & L in its role as counsel to the creditors' committee during the chapter 11, the Trustee felt it appropriate to hire separate counsel in connection with the Fraud Motion, so he requested and was authorized to retain Mintz Levin as *4 special counsel to represent the estate with respect to the Fraud Motion and "in connection with any matters incident to, or related to, the subject matter of the [Fraud] Motion."
During a preliminary hearing, Bowers requested, and was granted, an evidentiary hearing on the Fraud Motion, however, the bankruptcy judge cautioned Bowers that if his actions were determined to be frivolous, sanctions would be imposed, and a show cause order to that effect was issued. Bowers opted to proceed with the hearing, which was held on June 9-10, 2005.
As Trustee's counsel, Mintz Levin investigated the allegations raised in the Fraud Motion, conducted discovery, including depositions of numerous parties, and represented the estate at the two-day evidentiary hearing. At the conclusion, the bankruptcy court determined that the motion lacked merit, that Bowers had violated Fed. R. Bankr.P. 9011, and that sanctions were warranted. The bankruptcy court left open the sanctions issue, and scheduled a further hearing on that.
While the sanctions issue was pending, extensive negotiations were held between the Trustee, Bowers, and numerous other parties, and a global settlement agreement was reached and approved by the bankruptcy court resolving all of the issues raised by Bowers in the Fraud Motion, as well as all other issues between Bowers and the estate.[3] The settlement also resolved claims that other parties were threatening to bring against Bowers. Bowers has not filed any additional motions or pursued any appeals since entering into the global settlement.

B. Mintz Levin's fee applications
Mintz Levin's first fee application (the "First Interim Fee Application") requested fees in the amount of $268,555.00 and expenses of $6,255.08. The bankruptcy court entered an order ("First Fee Order") allowing fees on an interim basis in the reduced amount of $134,277.50 and expenses of $6,055.48.
In August 2008, Mintz Levin filed a final fee application ("Final Fee Application") seeking final approval of fees and expenses totaling $314,108.54, comprised of the following: (1) $140,332.98, for fees and expenses allowed by the First Fee Order; (2) $134,277.50 for fees and expenses not awarded in the First Fee Order; (3) $38,038.00 for fees and expenses incurred after the period covered by the First Fee Order; and (4) an estimated $2,500 for anticipated fees associated with the hearing on the Final Fee Application. The Appellant objected. At the conclusion of the hearing, the bankruptcy court entered the Final Fee Order allowing Mintz Levin's fees in the reduced amount of $180,871.04, representing the sum of the amounts listed in subparts (1), (3), and (4) above. The bankruptcy court explained its reduction of the requested fees as follows:
With respect to the Mintz Levin application, I have absolutely no quarrel with the results obtained with the fine and professional work that was done by that firm. I did reduce the first application in half because I thought that in light of the issues that were presented, that it was simply overstaffed, and I strongly *5 suspect that Mintz Levin's counsel disagrees with that, but I did seem to think that notwithstanding the fine effort made, that there were simply too many people at Mintz Levin that were stirring that pot.
The Appellant appealed the Final Fee Order. Mintz Levin filed a cross-appeal, but has since voluntarily withdrawn the appeal. See BAP No. MS 08-092.

JURISDICTION
Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," id. at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Id. (quoting In re American Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy court's order allowing or disallowing a professional's final fee application is a final order. See In re Bank of New England, 142 B.R. 584, 585 (D.Mass.1992). The Panel clearly has jurisdiction to hear this appeal.

STANDARD OF REVIEW
We review the bankruptcy court's findings of fact for clear error, and conclusions of law de novo. See TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir.1995); Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 719-20 n. 8 (1st Cir. 1994). The Appellant argues that the bankruptcy court committed legal errors. Therefore, the Panel's review here is de novo.

DISCUSSION
The Appellant does not challenge the reasonableness of Mintz Levin's hourly rates, the time spent on this matter, or the amount of the Final Fee Order. Rather, he argues that the bankruptcy court committed legal error in awarding any fees or costs to Mintz Levin, and then purports to raise the following issues on appeal:[4]
1. Did the Bankruptcy Court violate [the Appellant]'s 1st, 5th, 7th, 8th, 9th, and 10th amendment rights, as well as violate the "Bankruptcy Power" clause of the U.S. Constitution, by awarding Mintz Levin fees to prosecute the Court's sua sponte sanctions against another creditor.
2. Did the Bankruptcy Court commit legal err[or] by awarding Mintz Levin fees to prosecute the Court's sua sponte sanctions leveled against a creditor without the estate moving for its own sanctions.
3. Was Mintz Levin conflicted, adverse, and not disinterested per se while defending the estate against a creditor's fraud allegation leveled against another yet contemporaneous estate counsel while Mintz Levin was concurrently *6 represented by that other estate counsel in litigation outside this bankruptcy case.
4. Did the Bankruptcy Court commit legal err[or] by deciding the chapter 7 estate had a duty to defend a § 363 sale to a prejurious buyer who failed its good faith finding and by deciding the chapter 7 estate derive[d] a benefit from defending such a sale from collateral attack by the estate's largest creditor.
5. Did the Bankruptcy Court commit legal err[or] by awarding Mintz Levin fees to prosecute the largest creditor for sua sponte sanctions for raising fraud allegations against chapter 11 estate counsel after the evidence at trial showed that chapter 11 counsel failed to disclose their $275,000 retainers as property of the estate when accounting to creditors and the Court at the sale hearing regarding the benefit of the sale to creditors.
We will address each issue in turn.

I. Did the Bankruptcy Court violate [the Appellant]'s 1st, 5th, 7th, 8th, 9th, and 10th amendment rights, as well as violate the "Bankruptcy Power" clause of the U.S. Constitution, by awarding Mintz Levin fees to prosecute the Court's sua sponte sanctions against another creditor?
The Appellant argues that the Final Fee Order violates his "first amendment right to redress because the Bankruptcy Court substituted [his] interests in the estate for that of the Court's." He also argues that Mintz Levin's "concurrent representation of the estate while prosecuting the Bankruptcy Court's sua sponte sanctions denies [his] right to due process by promoting conflicting representation, undermines a fair and impartial trial, leads to excessive fines imposed upon the estate as attorneys fees, disrespects the estate's right to independence (1st, 5th, 7th, 8th, 9th, and 10th Amendment rights respectfully [sic]), and is implied or lawful under the Bankruptcy Powers clause of the U.S. Constitution." The Appellant then completely fails to adequately explain or address in any rational way how his constitutional rights were violated.
In addition, the Appellant's argument is based upon the erroneous premise that Mintz Levin was retained to "prosecute the court's sua sponte sanctions" against Bowers. This characterization is inaccurate and misleading, the cases cited by the Appellant are not applicable, and the Appellant's citation to said cases may itself be sanctionable. Mintz Levin was retained by the Trustee to represent the estate in connection with any issues incident or related to the subject matter of Bowers' Fraud Motion, and the services resulted in a court approved settlement of all of the issues raised in or arising out of the Fraud Motion. Through the settlement agreement, which resolved all issues relating to Bowers' claims, and as part of the consideration for Bowers releasing said claims, all parties to the settlement agreed to release Bowers regarding the sanctions issue. The services that the Appellant characterizes as "prosecuting the Court's sua sponte sanctions" were largely Mintz Levin's efforts to achieve the settlement agreement, which is well within the scope of Mintz Levin's retention order, and conferred a benefit to the estate.[5] Also fatal to the Appellant's cause, the amount of compensation awarded was not preserved *7 as an issue on appeal, and, therefore, that issue is waived.

II. Did the Bankruptcy Court commit legal err[or] by awarding Mintz Levin fees to prosecute the Court's sua sponte sanctions leveled against a creditor without the estate moving for its own sanctions?
The Appellant argues, without merit or support, that Mintz Levin should not have been awarded its fees and expenses because of an unidentified procedural error relating to the sanctions issue. The bankruptcy court clearly has authority to impose sua sponte sanctions, pursuant to Fed. R. Bankr.P. 9011. Furthermore, a party in the case, Kubotek Corporation, did file a motion for sanctions against Bowers under Fed. R. Bankr.P. 9011(c)(1)(A). Regardless, no monetary sanctions were ever imposed by the court against Bowers, and all issues raised by or against Bowers were resolved by the global settlement agreement, which involved consideration and mutual releases. Therefore, in addition to being totally without merit from the outset, the Appellant's appeal is now moot.

III. Was Mintz Levin conflicted, adverse, and not disinterested per se while defending the estate against a creditor's fraud allegation leveled against another yet contemporaneous estate counsel while Mintz Levin was concurrently represented by that other estate counsel in litigation outside this bankruptcy case?
The Appellant argues that Mintz Levin was conflicted and not disinterested because it was represented by S & L in litigation outside of the bankruptcy case, and as a result Mintz Levin "is disqualified from receiving attorneys' fees according to § 327(a) and § 328(c)."
Section 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327. The bankruptcy court may deny allowance of compensation if, at any time during such employment, the professional is not disinterested or holds an interest adverse to the interest of the estate. 11 U.S.C. § 328.
A "disinterested person" within the meaning of § 101(14) of the Bankruptcy Code is one who is "not a creditor, an equity shareholder, or an insider," nor presently, or within two years before bankruptcy, "a director, officer, or employee of the debtor," and does not have "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders" for "any reason." 11 U.S.C. § 101(14). The phrase "interest materially adverse to the interest of the estate" is not defined in the Code. The First Circuit interprets those words to mean "the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real." Kagan v. Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 646 (1st Cir. BAP 1999), aff'd, 230 F.3d 1347, 2000 WL 1425118 (1st Cir.2000).
Bankruptcy courts are accorded wide discretion in determining whether a conflict of interest exists, see In re Martin, *8 817 F.2d 175, 182 (1st Cir.1987), and appellate courts should give appropriate deference to the bankruptcy court's "front line" position, because the bankruptcy judge is in the best position to gauge the ongoing interplay of factors and to make what is often a very fact driven judgment call. "If [the bankruptcy judge] perceives a materially adverse interest, he has at his disposal an armamentarium of permissible remedies, including (but by no means limited to) disqualification, disallowance of all or some fees, and invalidation of the security interest." Drew v. Latimer, Biaggi, Rachid & Godreau (In re El Comandante Mgmt. Co., LLC), 395 B.R. 807, 817 (D.P.R.2008) (citing In re Martin, 817 F.2d at 182-83).
Here, Bowers (not the Appellant) objected to the Trustee's motion to retain Mintz Levin, alleging that Mintz Levin failed to fully disclose the nature of the relationship and alleged conflicts of interest involving Mintz Levin and S & L. The Trustee filed a response which included an affidavit by Michael S. Gardener, Esq., of Mintz Levin, describing in detail the connection between Mintz Levin and S & L. Specifically, he stated that S & L represents Mintz Levin in two lawsuits brought by former clients against the firm, and that neither case involves bankruptcy issues or this bankruptcy case. The Trustee also submitted an affidavit by Michael J. Goldberg, Esq., of S & L stating that as the client, Mintz Levin was not inhibited from pursuing S & L, and that "should Mintz Levin determine that it is in the best interest of the estate to pursue any claims against [S & L]," the current representation "would not prohibit investigation into, or the bringing of, such claims." The bankruptcy judge determined that there was no disqualifying conflict of interest, overruled Bowers' objection, and, in the exercise of his discretion, approved Mintz Levin's retention. The Appellant does not address the manner in which the bankruptcy judge either abused his discretion or committed an error of law in overruling Bowers' objection to Mintz Levin's retention. This Panel had been given no basis for and sees no independent reason to disturb the bankruptcy court's ruling.
Finally, the Appellant neither objected to the Trustee's motion to retain Mintz Levin, nor did he appeal from the bankruptcy court's order granting the motion, and, if he ever did have standing, the time for filing such an appeal expired a long time ago.

IV. Did the Bankruptcy Court commit legal err[or] by deciding the chapter 7 estate had a duty to defend a § 363 sale to a prejurious buyer who failed its good faith finding and by deciding the chapter 7 estate derive[d] a benefit from defending such a sale from collateral attack by the estate's largest creditor?
By raising this issue, the Appellant disingenuously and transparently attempts to use this appeal as a vehicle to again challenge the Sale Order. The Appellant has unsuccessfully raised these issues many times, through a litany of motions in the bankruptcy court, the U.S. District Court for the District of Massachusetts, and the U.S. Court of Appeals for the First Circuit, and they cannot be relitigated now through an appeal of the bankruptcy court's award of fees and expenses to Mintz Levin. The Appellant's argument as to this issue is completely without merit, is frivolous, and deserves no further comment.

*9 V. Did the Bankruptcy Court commit legal err[or] by awarding Mintz Levin fees to prosecute the largest creditor for sua sponte sanctions for raising fraud allegations against chapter 11 estate counsel after the evidence at trial showed that chapter 11 counsel failed to disclose their $275,000 retainers as property of the estate when accounting to creditors and the Court at the sale hearing regarding the benefit of the sale to creditors?
The Appellant argues that it was error for the bankruptcy court to award Mintz Levin fees and expenses for services performed in opposing the Fraud Motion. Again, this is another poorly veiled attempt to challenge the Sale Order and to relitigate both his own motion to vacate the Sale Order, and the Bowers Fraud Motion. These issues have been so over-litigated that they deserve no further discussion before this or any other forum. Therefore, the appeal as to this issue is without merit and is also dismissed as frivolous.

CONCLUSION
For the reasons discussed above, we conclude that the bankruptcy court committed no legal error or abuse of discretion in awarding attorneys' fees and costs to Mintz Levin. Accordingly, the Final Fee Order is AFFIRMED.
The Panel awards double costs to Mintz Levin. The Appellant is ordered to submit an accounting of costs on or before July 23, 2009. See Fed. R. Bankr.P. 8014.
NOTES
[1] The Sale Order was affirmed by the U.S. District Court for the District of Massachusetts (Case No. 4:03-cv-40279), the U.S. Court of Appeals for the First Circuit (Case No. 05-1060), and the Appellant's petition for writ of certiorari was denied by the U.S. Supreme Court.
[2] The Appellant has also filed at least six appeals of other bankruptcy court orders in this case, all of which have been rejected. He pursued four of those appeals to the First Circuit and two to the U.S. Supreme Court, where certiorari was denied.
[3] As part of the settlement, Bowers agreed, among other things, that: (1) a portion of the distribution to which he would be entitled on his unsecured claim (as calculated pursuant to an agreed-to formula) would instead be distributed to general unsecured creditors to compensate them for the increased administrative costs that resulted from defending the estate against Bowers' claims; (2) the next $35,000 of Bowers' claim would be distributed to Bowers; and (3) any amounts remaining on Bowers' claim would be distributed in agreed-to percentages to other parties affected by Bowers' actions.
[4] The issues as stated are not paraphrased. They are the words of the Appellant  verbatim.
[5] See bankruptcy court's comments at 5, infra.